## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

### MARTINSBURG DIVISION

**JASON STEVEN KOKINDA,**

**Plaintiff,**

**v.**                                      **CIVIL CASE NO.: 3:21-cv-00154**

**ELKINS POLICE DEPT.; CPRL. T. H. FOSTER;
PTLM. K. A. SHIFLETT; CPRL. MILLER S. P.;
PTLM. BOATWRIGHT; DUSM MICHAEL BARRON;
S.I. JOHN HARE; ANDY BALINT; NIKKI DOE;
MARK HORNAK; CYNTHIA REED EDDY; TOM CORBETT;
CHRISTOPHER MAHONEY; TAMMY SUMMERFIELD;
KIMBERLY BUTCHER; BILLY BUTCHER;
DAVID PARKER; ROSEANNA BELL;
LECKTA POLING; JANE DOE #1; BILL POWELL;
STEPHEN WARNER; SARAH WAGNER;
BRANDON FLOWER; MICHAEL ALOI;
THOMAS S. KLEEH; JOSH SHAPIRO;
WILLIAM R. STOYCOS; CITY OF ELKINS, W.V.;
MICHAEL PARKER; JAN E. DUBOIS;
WENDY PERREAULT,**

**Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Plaintiff's *pro se* amended complaint under 42 U.S.C. § 1983, (ECF No. 16), and Motion to Issue Stay and Abeyance of Case, (ECF No. 14). This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **PROPOSES** that

the presiding District Judge accept and adopt the findings herein and **RECOMMENDS** that the presiding District Judge **DENY** the Motion to Issue Stay and Abeyance of Case, (ECF No. 14), and **DISMISS** the following defendants from this action: Patrolman K.A. Shiflett; Billy Butcher; DUSM Michael Barron; S.I. John Hare; Andy Balint; Nikki Doe; Mark Hornak; Cynthia Reed Eddy; Michael Aloi; Thomas Kleeh; Jan E. DuBois; Lackta Poling; Jane Doe #1; Michael Parker; Bill Powell; Stephen Warner; Sarah Wagner; Brandon Flower; Josh Shapiro; William Stoycos; Tom Corbett; Christopher Mahoney; Tammy Summerfield; Kimberly Butcher; David Parker; Roseanna Bell; City of Elkins, West Virginia; Elkins Police Department; and Wendy Perreault.

## I.   **Relevant Facts and Procedural History**

### A. *Complaint*

On September 17, 2021, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1). He alleged that the defendants, which included the City of Elkins, Elkins Police Department, and numerous state and federal law enforcement officers, judges, prosecutors, and private citizens, conspired to retaliate against him with false state and federal criminal charges because he was a whistleblower and filed lawsuits. (*Id.*). The undersigned performed an initial screening of the complaint as required by 28 U.S.C. § 1915A and determined that Plaintiff failed to state a plausible claim against any of the named defendants. (ECF No. 12 at 3). Specifically, Plaintiff failed to articulate with any supporting factual explanation how each defendant violated his constitutional rights, what were the nature and outcome of his criminal charges, what contacts the nonresident defendants had with this jurisdiction, and how he was harmed by the defendants' actions. Given Plaintiff's *pro se* status, rather than recommend dismissal of the complaint, the undersigned thoroughly identified the deficiencies in the complaint, explained how

Plaintiff could correct them, and ordered Plaintiff to amend the complaint to provide the necessary information. (ECF No. 12).

### B. Amended Complaint

On March 10, 2022, Plaintiff filed the amended complaint. He asserted that Defendants illegally tracked him across multiple states and fabricated criminal charges against him in West Virginia as part of an interstate "retaliatory conspiracy" to stop Plaintiff from exposing government corruption. Plaintiff claimed that, at the pinnacle of the alleged conspiracy, Josh Shapiro and William R. Stoycos, Pennsylvania Attorney General and Deputy, conspired with their "friend" Tom Corbett, the former Governor of Pennsylvania, as well as Pennsylvania federal judges Mark Hornak, Jan E. DuBois, and Cynthia Reed Eddy. (ECF No. 16 at 18). Plaintiff alleged that the foregoing defendants used Pennsylvania U.S. Marshals Andy Balint and Nikki Doe to "goad other jurisdictions," including U.S. Marshal Michael Barron in Vermont and U.S. Marshal S.I. John Hare in West Virginia, to track, arrest, and detain Plaintiff to obstruct his lawsuits and protect themselves from civil and criminal liability. (*Id*. at 4, 5, 18, 41, 70). Plaintiff asserted that state and federal prosecutors Leckta Poling, Jane Doe #1, Bill Powell, Stephen Warner, Sarah Wagner, and Brandon Flower, as well as federal judges Thomas S. Kleeh, Michael Aloi, and Michael Parker were then involved in the malicious prosecutions of him. (*Id*. at 10-11, 54, 64). Plaintiff contended that Tammy Summerfield, David Parker, Christopher Mahoney, Kimberly Butcher, and Roseanna Bell are private citizens who were coerced or possibly compensated to provide witness statements to "fabricate probable cause" for the false criminal charges. (*Id*. at 8-10, 48-49). Plaintiff stated that Billy Butcher, an Elkins police officer, was possibly a relative of the witness Kimberly Butcher, so Plaintiff assumed that he might have been involved in the conspiracy. (*Id*. at 9). Finally, Plaintiff

asserted that Wendy Perreault, a Vermont Sex Offender Registry Coordinator, tracked him and fed information to other jurisdictions to ultimately file false failure to register charges in West Virginia. (*Id.* at 71-72). Plaintiff sued both the Elkins Police Department and the City of Elkins for applying an "unconstitutional custom" of filing false criminal charges. (*Id.* at 2, 27, 63).

According to Plaintiff, the "epic conspiracy and retaliatory prosecutions fabricated without probable cause," caused him to be detained for over two years, which ruined his relationship with his overseas fiancé and negatively affected his health and finances. (*Id.* at 19). Plaintiff provided the following statement of facts:

### 1. Elkins City Park Incident

On September 28, 2019, Plaintiff allegedly touched the buttocks of a 12-year-old female, noted in the record as P.M., while pushing her on a swing at Elkins City Park in Elkins, West Virginia. (*Id.* at 23). Plaintiff maintained that he only pushed the minor by the shoulder blades, and he thought that she was joking when she said that she only wanted to be pushed five times. (*Id.* at 25). He also argued that P.M. and her friend "K.K." were "aggressively friendly" toward him and misled him that they were 16 years old and had many older friends. (*Id.* at 43). Plaintiff admitted that he previously met P.M. and K.K. at the park and video chatted with them. (*Id.* at 43-44). Immediately after the swing incident, witnesses called 911, and Defendant K.A. Shiflett of the Elkins Police Department arrived at the park. Witnesses and the minor victim provided the following written statements the following day, September 29, 2019:

### a. Kimberly Butcher Statement

Kimberly Butcher asserted that a middle-aged man approached her and another female, whose name is redacted on the form, at the red swing set at the city park on

September 28, 2018 [sic]. (ECF No. 16-3 at 22). Ms. Butcher allegedly walked away to call her mother, but the redacted female asked Ms. Butcher to return to the swing set. (*Id*.). Ms. Butcher returned and heard the man offer the redacted female $40.00 to push her on the swing. (*Id*.). The redacted female purportedly did not respond to the request, but the man started pushing her anyway, and the redacted female stated, "only 5 seconds." (*Id*.). After five seconds, the redacted female repeatedly told the man to stop pushing her at which time he slid his hands down her back and "grabbed her butt." (*Id*.). Ms. Butcher stated that the redacted female jumped off of the swing, went to Ms. Butcher, and they were joined by another woman from the park who told the man to "get the f*ck away," and the man started to walk away. (*Id*. at 22-23). Ms. Butcher called 911 and handed the phone to the other woman, who stayed with them and explained the incident to the police and Ms. Butcher's mom when they arrived. (*Id*. at 23).

### b. Rose Bell Statement

Rose Bell stated that she was sitting at a picnic table on September 28, 2019 at 12:45 p.m. when she noticed a man "hanging around the girls at the swings." (*Id*. at 24). Ms. Bell had her "eye on" him for weeks because she observed him watching young girls playing for hours as he pretended to work on his laptop. (*Id*.). On September 28, 2019, she saw him pacing behind the girls and sitting in a swing close to them. (*Id*.). The girls asked him to leave, but he grinned and "kept on" going. (*Id*.). He walked up behind "Paige" and put his hands on her "rear" and tried to push her on the swing. (*Id*.). Ms. Bell approached the girls and asked them if they knew the man. (*Id*.). They said "no" and asked for help. (*Id*.). Ms. Bell told the man to get out of the park and he ran as she called 911. (*Id*.).

### c. P.M. Statement signed by Father, Christopher Mahoney

P.M. stated that, on an earlier date, she was sitting on a swing at the city park when "he" asked her "for [her] tik tok." (*Id.* at 25). P.M. purportedly provided a fake account name, but the man found the real one and kept asking P.M. and another person, whose name is redacted in the record, if he could get in the shower with them when no one was home. (*Id.*). The man supposedly kept moving closer to them, and they ran. (*Id.*). P.M. and the other individual returned to the park on Sunday and saw the man again; he kept asking if they could go somewhere private where no one could see them, and P.M. responded "no." (*Id.*). Then, the man pushed P.M. on a swing and "touched [her] butt." (*Id.* at 25-26).

### 2. State Criminal Charges

Plaintiff was charged with three state crimes that are relevant in this action, all of which he claims were eventually dismissed without prejudice. (*Id.* at 21).

### a. Obstruction and Failure to Sign a Fingerprint Card

Corporal T.H. Foster of the Elkins Police Department swore out a criminal complaint in Case No. 19-M42M-01521. He stated that he responded to the tennis court area at Davis & Elkins College campus on September 29, 2019 to identify a male subject regarding a sexual abuse case. (ECF No. 16-3 at 28). Corporal Foster observed a man matching the suspect's description, and Corporal Foster announced himself as "Elkins PD." (*Id.*). The man allegedly continued to walk away as Corporal Foster announced himself, only stopping when Corporal Foster threatened to tase him. (*Id.*). The man identified himself as "Representative Jason Stevens," but he would not provide his birthdate to confirm his identity; he stated that he wanted an attorney and would answer any questions once his attorney was present. (*Id.*). Corporal Foster arrested the man for

obstructing the investigation. (*Id*.). In the police cruiser, the man gave Corporal Foster his identification card, which confirmed that he was Plaintiff "Jason Steven Kokinda." (*Id*.). Plaintiff was transported to city hall for processing where he refused to sign his fingerprint card, and he was taken to Tygart Valley Regional Jail where he refused to sign all intake paperwork. (*Id*.). Plaintiff was charged with West Virginia state crimes of refusing to sign a fingerprint card in violation of W.V. Code 15-2-24(h), and two counts of obstructing an officer, fleeing from an officer, or making false statements to an officer in violation of W.V. Code § 61-5-17. (ECF No. 16 at 20, 27). According to Plaintiff, Patrolman Boatwright of the Elkins Police Department filed an affidavit to establish probable cause to arrest him and search his car in the Davis & Elkins College parking lot on September 29, 2019. (*Id*. at 23-24).

### b.  Third Degree Sexual Abuse

Plaintiff alleges that "a few days" after September 29, 2019, he was also charged with third degree sexual abuse, bearing case number 19-M42M-01538, which related to the incident at Elkins City Park on September 28, 2019. (*Id*. at 20).

### c.  Failure to Register as a Sex Offender

Plaintiff further asserts that he was charged with three counts of failure to register as a sex offender in case numbers 19-MF-228 and 19-B-164 in Randolph Circuit Court. (*Id*.). He contends that Corporal Miller, S.P., a Randolph County State Trooper, filed the failure to register charges even though he admitted that he did not have probable cause. (*Id*. at 3).

### 3.  Federal Charges

On December 17, 2019, Plaintiff was indicted in the United States District Court for the Northern District of West Virginia for failure to update sex offender registration,

which Plaintiff refers to as the Sex Offender Registration and Notification Act (SORNA) charge. *United States v. Kokinda*, No. 2:19-cr-00033-TSK-MJA (N.D.W. Va. Dec. 17, 2019), ECF No. 200. On February 2, 2021, a superseding indictment was filed against Plaintiff which charged him with possession of child pornography by a person with a previous conviction. *Id.* at ECF No. 200. The charges were separated into two different cases. On October 21, 2021, a jury convicted Plaintiff of failure to update sex offender registration. *United States v. Kokinda*, No. 2:21-cr-00020-TSK-MJA (N.D.W. Va. Sept. 8, 2021), ECF No. 62. Sentencing has been continued on that conviction. *Id.* at ECF 135. However, Plaintiff remains detained by the Federal Bureau of Prisons. *Id.* at ECF No. 137; *Kokinda*, No. 2:19-cr-00033-TSK-MJA at ECF Nos. 218, 362. His trial on the child pornography indictment is scheduled to begin on July 12, 2022. *Kokinda*, No. 2:19-cr-00033-TSK-MJA at ECF No. 353.

### C.  Motion to Issue Stay and Abeyance

Plaintiff moves for a stay and abeyance in this civil case because he would like to first "dispose" of his federal criminal charges and obtain assistance of counsel. (ECF No. 14 at 2).

## II.   Standard of Review

As stated in the undersigned's previous Memorandum Opinion and Order, when a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must dismiss any portion of a complaint which is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. A "frivolous" case has been defined as one which is based upon an indisputably meritless legal theory, *Anders v. California*, 386 U.S. 738, 744 (1967), or lacks "an arguable basis either in law

or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Denton v. Hernandez,* 504 U.S. 25 (1992). Likewise, a complaint fails to state a compensable claim, and therefore should be dismissed, when viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007).

The Supreme Court of the United States further clarified the "plausibility" standard in *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009), stating that the Court is required to accept as true the factual allegations asserted in the complaint, but is not required to accept the legitimacy of legal conclusions that are "couched as ... factual allegation[s]." *Id.* at 678 (quoting *Bell Atlantic* Corp, 550 U.S. at 554). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Although *pro se* complaints, such as the one filed in this case, must be liberally construed to allow the development of potentially meritorious claims, the Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.   <u>Discussion</u>

Plaintiff's complaint is filed pursuant to 42 U.S.C. § 1983, which provides a remedy to parties who are deprived of federally protected civil and constitutional rights by

persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." The statute "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)) (internal markings omitted). Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 171-172 (1961), *overruled on other grounds by* 436 U.S. 658.

In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of State law. *Perrin v. Nicholson*, C/A No. 9:10-1111-HFF-BM, 2010 WL 3893792, at *2 (D.S.C. Sept. 8, 2010); *see also American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. at 50.

The undersigned notes that Plaintiff also sued various federal employees in this case. Constitutional claims against federal agencies and officials are analyzed under the decision of the Supreme Court of the United States ("Supreme Court") in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which "established that victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute

10

conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980). A *Bivens* claim is similar to a claim made under 42 U.S.C. § 1983; however, federal officials cannot be sued under § 1983 because they do not act under color of state law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 & n.30 (1982). *Bivens* actions and actions under § 1983 are treated as "counterparts," and case law interpreting the two is viewed as interchangeable. *See Farmer v. Brennan*, 511 U.S. 825, 839 (1994): *see also Fitzgerald,* 457 U.S. at 818 n.30; *Rios v. Slater*, No. CV 4:16-1314-MGL-TER, 2017 WL 1058453, at *2 (D.S.C. Mar. 2, 2017), *report and recommendation adopted*, No. CV 4:16-1314-MGL, 2017 WL 1048355 (D.S.C. Mar. 20, 2017).

For the following reasons, Plaintiff fails to assert a viable claim under § 1983 or *Bivens* against many of the named defendants.

### A. *Law Enforcement Officers*

#### 1. **Patrolman Shiflett**

In his original complaint, Plaintiff asserted that Defendant Patrolman K.A. Shiflett (hereinafter "Shiflett") "plainly coerced civilian witnesses" or conspired to fabricate charges against Plaintiff. (ECF No. 1 at 3). Plaintiff did not include any other specific allegations pertaining to Shiflett. (ECF No. 1). Therefore, on initial screening, the undersigned entered an Order, advising Plaintiff that he failed to state a claim against Shiflett because his only allegation was a mere conclusory statement. (ECF No. 12 at 5). The undersigned ordered Plaintiff to amend the complaint and provide facts demonstrating that Shiflett coerced witnesses, and that the coercion was a constitutional deprivation to Plaintiff. (*Id*. at 5-6).

In the amended complaint, Plaintiff clarified that he merely "infers" that Shiflett coerced P.M. and witnesses to fabricate probable cause to arrest him because Shiflett was

the officer called to the park on September 28, 2019. (ECF No. 16 at 51). Plaintiff does not assert any facts to show that the victim or witnesses were coerced into providing untruthful statements, much less does he offer any facts to show that Shiflett was the one that coerced them to do so. Plaintiff's baseless theory that Shiflett must have coerced witnesses because Shiflett was the officer that responded to the park does not state a viable claim against Shiflett. Plaintiff simply does not show any connection between Shiflett and any constitutional violation. For that reason, the undersigned **FINDS** that Shiflett should be dismissed as a defendant in this action.

### 2.  Billy Butcher

Plaintiff initially alleged that Billy Butcher, a police officer with the Elkins Police Department, "may have conspired" with other defendants to harm him. (ECF No. 1 at 9-10). However, the only specific allegations pertaining to Billy Butcher were that Kimberly Butcher was possibly his relative, which may have made other witnesses more comfortable to be part of a conspiracy to fabricate false allegations, and Billy Butcher might have passed reward money or helped witnesses. (*Id*.). On initial screening the undersigned concluded that Plaintiff failed to state a claim against Billy Butcher because his vague allegations were based entirely upon speculation and included no actual facts indicating how, or even if, Billy Butcher had any involvement or contact with Plaintiff or his charges. (ECF No. 12 at 11). The undersigned ordered Plaintiff to amend the complaint and explain the role played by Billy Butcher, how he violated Plaintiff's rights, and what injury Plaintiff suffered.

In his amended complaint, Plaintiff added that "[i]nformation provided by local Elkins residents is that Kimberly Butcher is the neice [sic] of city cop Billy Butcher," which "creates reasonable inference that he helped coerce civillian [sic] witnesses into helping

to fabricate WV charges." (ECF No. 16 at 9). As stated, Plaintiff provides zero facts to support his allegation that witnesses were coerced to fabricate charges against him. Moreover, he does not assert any factual basis that Billy Butcher was involved in any of those criminal charges. Plaintiff's deduction that Billy Butcher must have been part of a "conspiracy" against him because Billy Butcher is related to one of the state's witnesses does not even begin to sustain a plausible cause of action under § 1983. It is a purely theoretical claim. For those reasons, the undersigned **FINDS** that Billy Butcher should be dismissed as a defendant in this action.

### 3.  Michael Barron

In his complaint, Plaintiff alleged that Defendant Deputy United States Marshal (DUSM) Michael Barron of Vermont (hereinafter "Barron") conspired with West Virginia and Pennsylvania officials to retaliate against Plaintiff "for his lawsuits and whistleblowing." (ECF No. 1 at 4). Plaintiff claimed Vermont was the source of ping warrants and tracking placed on his phone and that "they executed entrapments" to make Plaintiff violate SORNA. On initial screening, the undersigned concluded that Plaintiff's allegations against Barron were conclusory and devoid of factual support. (ECF No. 12 at 7). In particular, Plaintiff did not provide any information about with whom Barron communicated and what Barron did that Plaintiff believed constituted a conspiracy, nor did he explain how a DUSM in Vermont could have entrapped him in West Virginia. Therefore, the undersigned explained that Plaintiff failed to state a claim against Barron and ordered Plaintiff to amend his complaint and supply factual support and context for his claims. (*Id*.). Given that Barron was not a West Virginia resident, the undersigned specifically ordered Plaintiff to clarify Barron's contacts with West Virginia. (*Id*.).

In his amended complaint, Plaintiff admitted that he did not have any direct

evidence of a retaliatory conspiracy or that Barron was part of it, and his claim against Barron was the result of his own deductions based upon what he considered circumstantial evidence. (ECF No. 16 at 4, 41, 70). Plaintiff alleged that Barron was "implicit in Vermont retaliations" by helping investigate and track Plaintiff for SORNA violations in Vermont. (*Id.* at 4). Upon realizing that Plaintiff was in West Virginia by tracking his cell phone and bank records, Barron allegedly electronically communicated with S.I. John Hare, a United States Marshal in West Virginia, from approximately August to December 2019 to assist in the West Virginia investigation of Plaintiff and assist in filing the "retaliatory SORNA charge." (*Id.* at 4, 71-72).

Plaintiff's claims against Barron are deficient for several reasons. First, to the extent that Plaintiff alleges that Barron illegally tracked him or otherwise violated his rights in Vermont, this Court does not have jurisdiction to review those claims. In order for a federal court to exercise personal jurisdiction over a nonresident defendant, two conditions must apply: "(1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan,* 259 F.3d 209, 215 (4th Cir.2001)). Because "the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction." *Ramadan v. FBOP*, No. 1:14-CV-25757, 2015 WL 13745349, at *5 (S.D.W. Va. Aug. 27, 2015), *report and recommendation adopted,* No. CV 1:14-25757, 2015 WL 5684126 (S.D.W. Va. Sept. 28, 2015) (citing *In re Celetox Corp.,* 124 F.3d 619, 627-28 (4th Cir. 1997)).

14

"A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Maryland, Inc.* 334 F.3d. at 397 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, (1945)). There are two types of contacts that may confer personal jurisdiction over a nonresident defendant. *Id.* First, when the nonresident defendant's contacts with the forum state also provide the basis of the suit, then "specific jurisdiction" may be established. *Id.* "In determining whether specific jurisdiction exists, we consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* (citations omitted). If the defendant's contacts with the state are not the basis of the lawsuit, then the defendant must engage in activities in the state that are continuous and systematic. *Id.*

Here, Plaintiff does not claim that Barron engaged in continuous and systemic activities in West Virginia. Instead, he speculates—without providing any factual support—that Barron illegally tracked him and otherwise violated Plaintiff's rights in Vermont, which Plaintiff surmises led to his problems in West Virginia. Plaintiff provides no factual basis to demonstrate that Barron purposefully availed himself of the privilege of conducting activities in West Virginia, or that he engaged in allegedly tortious activity, knowing that his conduct would harm a West Virginia resident. *Carefirst of Maryland, Inc.* 334 F.3d. at 397-98. The mere fact that Barron's conduct in Vermont *may* have had an impact on the charges levied against Plaintiff in West Virginia does not suffice to authorize this Court's personal jurisdiction over Barron. *See Walden v. Fiore,* 571 U.S.

277, 289-291 (2014).

Furthermore, it appears that Barron's only alleged contact with the Northern District of West Virginia was that he violated Plaintiff's rights relating to the SORNA prosecution. That claim, if true, calls into question the validity of Plaintiff's SORNA conviction, which has not been reversed or vacated. Therefore, to the extent that Barron assisted in the West Virginia investigation or charge, Plaintiff's claims against Barron are precluded by *Heck v. Humphrey*, 512 U.S. 477 (1994), because that conviction has not been reversed or otherwise invalidated. *Omar v. Chasanow*, No. CV PJM-08-2626, 2008 WL 11450761, at *2 (D. Md. Oct. 16, 2008), *aff'd as modified,* 318 Fed. Appx. 188 (4th Cir. 2009); *Husband v. Rafferty*, 411 Fed. Appx. 622, 622–23 (4th Cir. 2011).

Finally, notwithstanding the above issues, Plaintiff fails to state a claim against Barron. Plaintiff makes clear that his allegation that Barron was involved in an "epic conspiracy" is based on nothing more than his own speculation. Plaintiff does not assert any facts to state a viable claim against Barron under *Bivens*. For those reasons, the undersigned **FINDS** that Barron should be dismissed as a defendant in this action.

### 4. S.I. John Hare

Plaintiff asserted that West Virginia U.S. Marshal S.I. John Hare (hereinafter "Hare") conspired with Marshals in Vermont and Pennsylvania, as well as other defendants, to retaliate, obstruct, and oppress Plaintiff. (ECF No. 1 at 5). He added that Hare "likely" helped coordinate state officials to take action that would form a basis for federal detainment. On initial screening, the undersigned advised Plaintiff that his allegations were conclusory and entirely devoid of factual support. Plaintiff failed to provide any facts to indicate how Hare conspired with others, how Plaintiff knew of the conspiracy, whether Plaintiff was detained by federal authorities, the outcome of the

16

charges against him, and how Defendant Hale acted to "by-pass" the grand jury. (ECF No. 12 at 7). The undersigned ordered Plaintiff to amend the complaint to add supporting information. (*Id.*).

Amending his complaint, Plaintiff stated that Hare "played a critical role in the retaliatory conspiracy" by "assist[ing] state defendants in fabricating probable cause during investigation stage to set context for malicious SORNA prosecution based on overruled "continuing obligation' or 'telescoping residency' theories." (ECF No. 16 at 5). He stated that officials "more likely than not" contacted Hare to start building a case against Plaintiff based on illegal tracking information they obtained on August 24 due to a false theory that Plaintiff was obligated to update his Vermont sex offender registration information even after leaving. (*Id.* at 52). Plaintiff contended that Hare had "secret meetings" with other defendants in the Elkins courthouse to conspire against him. (*Id.* at 72).

Again, any claims which would cast doubt on or imply the invalidity of Plaintiff's SORNA conviction are prohibited in this action under *Heck*. That includes any claims that Hare participated in the investigation and prosecution that secured such conviction. If Plaintiff alleges that Hare had any part in any other alleged constitutional violations, he fails to supply any facts to assert a viable claim. He offers nothing more than his own theories and vague accusations that Hare was part of a conspiracy against him. Despite being given the opportunity to amend his complaint, Plaintiff's allegations against Hare are devoid of any factual support. For those reasons, the undersigned **FINDS** that Hare should be dismissed as a defendant in this action.

### 5. Andy Balint and Nikki Doe

In his original complaint, Plaintiff accused Pennsylvania U.S. Marshals Andy

Balint and Nikki Doe (hereinafter "Balint" and "Nikki Doe") of conspiring with other defendants to retaliate against him. (ECF No. 1 at 6). Plaintiff believed that Balint and Doe were involved in a conspiracy in Pennsylvania and Vermont, which he inferred ultimately resulted in retaliation against him in West Virginia. (*Id.*). However, Plaintiff did not include any facts to support such claim and only provided his own speculation. Therefore, on initial screening, the undersigned ordered Plaintiff to amend his complaint to provide factual support for his claims against Balint and Nikki Doe and to demonstrate what, if any, specific contacts the nonresidents had with West Virginia. (ECF No. 12 at 8).

In his amended complaint, Plaintiff reasserted that Balint and Nikki Doe were involved in a "retaliatory conspiracy that manifested in WV." (ECF No. 16 at 6). He stated that he reasonably inferred that Balint and Nikki Doe contacted Wendy Perreault of the Vermont Sex Offender Registry (SOR) to tell her that Plaintiff was causing problems for the judges in the Pennsylvania courts. (*Id.* at 6, 36). He surmised that the "tip" was probably "oblique instructions" to tell Perreault to stop Plaintiff from filing lawsuits, particularly by fabricating SORNA violations. (*Id.*). Plaintiff conceded that he did not have any direct evidence of a conspiracy between Balint, Nikki Doe, Perreault, or anyone else, but he stated that direct evidence of conspiracy is rare, and the Pennsylvania defendants should not be allowed to "slither away" based on lack of conclusive direct evidence (*Id.* at 58, 59). He asserted that it was "more likely than not" that they were instructed to goad other officials into retaliating against him. (*Id.* at 70).

Plaintiff's claims against Balint and Nikki Doe are lacking for the same reasons as the previous defendants. He does not provide any facts to support his conspiracy theory. Indeed, Plaintiff provides no factual support for his claims that Balint and Nikki Doe violated his rights in any manner, admitting that he only infers that they were involved in

a conspiracy against him. Moreover, the only apparent connection between Balint and Nikki Doe and this judicial district is that they were purportedly involved in the SORNA charge. Plaintiff cannot sue Balint and Nikki Doe in this civil action concerning a criminal conviction that has not been overturned. For all of those reasons, the undersigned **FINDS** that Balint and Nikki Doe should additionally be dismissed as defendants in this action.

### B. Judges

Plaintiff sues several judges in this action. It is well-settled that judges are absolutely immune from suit for a deprivation of civil rights even if such acts were allegedly done maliciously, corruptly, or in bad faith and no matter "how erroneous the act may have been, and however injurious in its consequences [the judicial act] may have proved to the plaintiff." *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992) (citations omitted); *Plotzker v. Lamberth*, No. 3:08-cv-00027, 2008 WL 4706255, at *4 (W.D. Va. Oct. 22, 2008) (citations omitted); *Quigley v. Williams*, No. 3:18-CV-1323, 2018 WL 8621028, at *7–8 (S.D.W. Va. Nov. 16, 2018), *report and recommendation adopted,* No. 3:18-CV-01323, 2019 WL 1858308 (S.D.W. Va. Apr. 25, 2019), *aff'd,* 811 Fed. Appx. 868 (4th Cir. 2020) (finding that judicial immunity equally applies to federal judges in *Bivens* actions). This long-standing common law doctrine is "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Judicial immunity ensures that while a judge's actions are "subject to correction on appeal or other authorized review," they do "not expose him to a claim for damages in a private action, or put him to the trouble and expense of defending such an action." *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985).

There are only two conditions in which judicial immunity does not bar Plaintiff's

claim for damages: (1) if the judge acted in the "clear absence of all jurisdiction" or (2) the judge's action was not a "judicial act." *King*, 973 F.2d at 356-57. Under the first option, "[a] distinction is drawn between acts that are performed in 'excess of jurisdiction' and those performed in the 'clear absence of all jurisdiction over the subject-matter,' with the former type of act accorded immunity." *Id.*  Therefore, the question is "whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him, and, in answering that question, the scope of the judge's jurisdiction must be construed broadly." *Id. at 357* (internal quotations and markings omitted). In determining whether the act at issue was a "judicial act," the Court examines "whether the function is one normally performed by a judge, and whether the parties dealt with the judge in his or her judicial capacity." *Id.* Notably, "the absolute immunity extended to a judge performing a judicial action is not in any way diminished even if his or her exercise of authority is flawed by the commission of grave procedural errors." *Id.* Such "errors do not render the act any less judicial, nor permit a determination that the court acted in the absence of all jurisdiction." *Id.*

### 1.  Mark Hornak and Cynthia Reed Eddy

Plaintiff alleged in his complaint that Mark Hornak, United States District Judge for the Western District of Pennsylvania, and Cynthia Reed Eddy, United States Chief Magistrate Judge for the Western District of Pennsylvania, (hereinafter "Judge Hornak" and "Judge Eddy") conspired against Plaintiff as a favor to former Pennsylvania Governor, Tom Corbett (hereinafter "Corbett"). (ECF No. 1 at 6-8). Plaintiff's only specific allegations were that Judge Hornak had a record of judicial misconduct and Judge Eddy obstructed Plaintiff's "dead lawsuits." (*Id.* at 8). Plaintiff's claims against Judges Hornak and Eddy were too vague and unsupported to be comprehensible. Thus, the undersigned

ordered Plaintiff to amend his complaint and state with specific factual allegations what the defendants did that violated his constitutional rights, describe how he was injured, and explain how the judges' actions are relevant to Plaintiff's claims against the West Virginia defendants. (ECF No. 12 at 8-9).

In the February 16, 2022 Order, the undersigned explained the doctrine of judicial immunity to Plaintiff and advised him that he was barred from joining Judges Hornak and Eddy in a lawsuit unless he could point to extrajudicial actions that violated his rights, but simply saying that an action was "extrajudicial" is not enough because that is a conclusion. (*Id.*). The undersigned ordered Plaintiff to state facts showing how the judges' acts were extrajudicial. (*Id.*).

In his amended complaint, Plaintiff asserted that Hornak and his "sidekick" Eddy played a key role in directing U.S. Marshals to coordinate West Virginia malicious prosecutions, which Plaintiff claimed was outside the judges' jurisdiction and extrajudicial. (ECF No. 16 at 6-7). He further contended that "an expert examination of other lawsuits would prove that Hornak and Eddy were treating [Plaintiff] extremely unfair in all litigation." (*Id.* at 55).

Even with the amendment, Plaintiff simply does not state a claim that Judges Hornak or Eddy acted without jurisdiction or performed non-judicial acts that harmed him, nor does he assert any facts linking the Pennsylvania judges to this jurisdiction. He contends that they ruled unfairly in his lawsuits, but those actions were taken within their judicial capacity and outside of this jurisdiction. Furthermore, Plaintiff's theory that Judges Hornak and Eddy conspired with defendants in other states to retaliate against him in West Virginia is based on inferences and "logical deductions" as opposed to any factual evidence. (ECF No. 16 at 36, 70). For those reasons, the undersigned **FINDS** that

Judge Hornak and Judge Eddy are immune from suit and should be dismissed as defendants in this action.

### 2. Michael Aloi and Thomas Kleeh

In the complaint, Plaintiff accused Michael Aloi, United States Magistrate Judge for the Northern District of West Virginia, and Thomas S. Kleeh, United States District Judge for the Northern District of West Virginia, of acting extrajudicially to "protect state defendants" and to make "state officials confident to carry out retaliation." (ECF No. 1 at 12-13). As with every other claim, Plaintiff's complaint was entirely devoid of facts to support his allegations, and his statements regarding Judges Kleeh and Aloi were vague, conclusory, and without context. On initial screening, the undersigned reminded Plaintiff that judges are entitled to absolute judicial immunity for actions taken within the scope of their professional authority. (ECF No. 12 at 13). Furthermore, the undersigned noted that, while Plaintiff contended that the defendants acted outside of their judicial roles, in a "private capacity," he provided no factual basis for that contention. (*Id.*). Therefore, Plaintiff was ordered to amend his complaint and state exactly what Judges Kleeh and Aloi did or did not do, when the actions took place, in what context they occurred, and what information he had to support his claims. (*Id.*).

In the amended complaint, Plaintiff stated that if a jury believes that Judges Kleeh and Aloi "used expertise to help plan pretextual WV state prosecutions, they are liable for extrajudicial nature of acts." (ECF No. 16 at 11-12). He further asserted that "[t]he judicial misconduct they later engaged in is immune but strongly evinces involvement in planning pretextual state WV charges." (*Id.* at 12). He contended that Judges Kleeh and Aloi refused to even discuss the merits of the "obvious errors" of holding him for two years without probable cause. (*Id.* at 54). Plaintiff expressed multiple complaints regarding

Judge Kleeh's rulings in his criminal cases. (*Id.* at 64).

As Plaintiff concedes, judicial immunity shields Judges Kleeh and Aloi from liability regarding all of their actions taken in their judicial capacity. Moreover, Plaintiff merely speculates that Judges Kleeh and Aloi were involved in a conspiracy against him. Plaintiff does not include any facts showing that they performed extrajudicial actions which violated his rights. Plaintiff's unhappiness with the way that the judges ruled and his speculation that they may have conspired against him are insufficient to defeat judicial immunity, or state a claim for civil damages. The undersigned **FINDS** that Judge Kleeh and Judge Aloi are immune from suit and Plaintiff fails to state a claim against them. Therefore, they should be dismissed as defendants in this action.

### 3.  Jan E. DuBois

Plaintiff alleged in his complaint that he previously sued Jan E. DuBois, United States District Judge for the Eastern District of Pennsylvania, because Judge DuBois coordinated an extrajudicial retaliation to steal his case file. (ECF No. 1 at 16). The undersigned ordered Plaintiff to amend his complaint and add specific facts implicating Judge DuBois and explaining his role in the instant matter, as well as describing Judge DuBois's contacts with West Virginia. (ECF No. 12 at 14). The undersigned reminded Plaintiff that conclusory statements, unsupported allegations, and speculation were insufficient to state a plausible claim for relief. (*Id.*).

In his amended complaint, Plaintiff reiterated that he sued Judge DuBois for extrajudicial retaliation conspiracy to steal his case file, obstruct justice, and protect Corbett from liability. (ECF No. 16 at 14). According to Plaintiff, Judge DuBois conspired to have prison staff lose or steal Plaintiff's case file and make it look like Plaintiff sent it home. (*Id.* at 32). Thus, Plaintiff stated that Judge DuBois had a strong motive to work

with the Pennsylvania prosecutors to oppress him. (*Id.* at 14).

Plaintiff infers that Judge DuBois had "motive" to conspire with other defendants in malicious prosecutions of Plaintiff. However, Plaintiff does not provide any support for that theory or evidence of a conspiracy. Plaintiff does not adduce a single fact that Judge DuBois violated his rights and harmed him in any manner in this jurisdiction. Moreover, Judge DuBois maintains absolute judicial immunity in a lawsuit for damages concerning his judicial acts. Plaintiff's conclusory assertion that Judge DuBois acted extrajudicially is insufficient to state a claim to defeat judicial immunity. For those reasons, the undersigned **FINDS** that Judge DuBois should be dismissed as a defendant in this action.

### C. Prosecutors

Much like judges, prosecutors are absolutely immune in civil damages lawsuits for actions taken within the scope of their prosecutorial duties. The threat of § 1983 suits for actions taken in initiating and pursuing a criminal prosecution would undermine the performance of the prosecutor's duties in enforcing the criminal law, which would ultimately harm the citizens. *Imbler v. Pachtman*, 424 U.S. 409, 424-25 (1976). As the Supreme Court has explained, prosecutorial immunity does not leave a genuinely wronged individual without redress. In fact, various post-trial procedures are available to determine if a person received a fair trial, such as the remedial powers of the trial judge, appellate review, and state and federal post-conviction collateral remedies. *Id.* at 427. Moreover, despite their civil immunity, prosecutors are not beyond the reach of criminal law and are also subject to professional discipline by an association of their peers should they violate the law or the ethical standards of their profession. *Id.* at 429.

### 1. Leckta Poling, Jane Doe #1, and Michael Parker

In his complaint, Plaintiff asserted that Leckta Poling and Jane Doe #1, who were

prosecutors in the Magistrate Court of Randolph County, and Michael Parker, who was the Randolph County Prosecutor, conspired with other defendants. (ECF No. 1 at 11, 15). He stated that Poling "refused to reduce bail or recommend dismissal of charges," and she and Jane Doe#1 conspired to hold Plaintiff on bogus "failure to register" charges. (*Id.* at 11). Plaintiff claimed that Parker conspired to prosecute Plaintiff and hold him under unlawful bond. (*Id.* at 15).

The undersigned advised Plaintiff on initial screening of the complaint that prosecutors have immunity from liability for acts committed in the course of litigation. (ECF No. 12 at 11-12). Consequently, the undersigned ordered Plaintiff to amend his complaint to specify exactly what Poling, Parker, and Jane Doe #1 did that is actionable in this case. (*Id.* at 12). The undersigned ordered Plaintiff to include factual allegations demonstrating that Poling, Parker, and Jane Doe #1 acted outside the scope of their advocate's role and violated his constitutional rights. (*Id.*).

In his amended complaint, Plaintiff stated that Poling and Jane Doe #1 were part of the retaliatory conspiracy to fabricate probable cause for malicious state and federal prosecutions. (ECF No. 16 at 10). Parker was allegedly involved in planning the "pretextual fabrications" used to arrest Plaintiff on September 29, 2019. (*Id.* at 13). Plaintiff later states that "[t]he judges and prosecutors all held [him] in unlawful detention by denying due process and perpetually evading defects, inter alia." (*Id.* at 70).

Insofar as Plaintiff challenges any of Poling, Jane Doe #1, or Parker's involvement in his prosecutions, the defendants are afforded absolute prosecutorial immunity. Moreover, Plaintiff fails to state a claim against Poling, Jane Doe #1, and Parker outside of their prosecutorial duties. His assertion that they were involved in a conspiracy is entirely speculative. Plaintiff does not provide any specific facts to indicate that these

individuals violated his rights. For the above reasons, the undersigned **FINDS** that Poling, Jane Doe #1, and Parker should be dismissed as defendants in this action.

### 2. Bill Powell, Stephen Warner, Sarah Wagner, and Brandon Flower

Plaintiff claimed that federal prosecutors Bill Powell, Stephen Warner, Sarah Wagner, and Brandon Flower conspired to assist the State of West Virginia in fabricating charges against him. (ECF No. 1 at 12). On initial review, the undersigned noted that Plaintiff asserted conclusory and speculative claims with no supporting facts. (ECF No. 12 at 12). The undersigned specified that, as these defendants enjoy the same prosecutorial immunity as the state attorneys, Plaintiff must amend the complaint and provide factual details concerning the specific acts taken by the defendants that violated Plaintiff's rights and were outside the scope of their roles as advocates. (*Id.*).

In his amended complaint,  Plaintiff stated that "[i]t is evident that state charges were fabricated to engineer maximum SORNA penalty and prejudice jurors who were predominately friends and family of justice system officials at the start of voir dire," and "[a]s a result of actions, Penn. state conspirators were able to obstruct [Plaintiff's] lawsuits and quest to expose corruption and vindicate his name." (ECF No. 16 at 11).

Plaintiff very clearly failed to correct the deficiencies that the undersigned identified. He asserts the same speculative claims that the defendants conspired with state officials to harm him, but he does not provide any supporting facts or show any actions outside of the defendants' prosecutorial duties such that they are not absolutely immune in this civil lawsuit for monetary damages. Given that Plaintiff fails to state any viable claims against Bill Powell, Stephen Warner, Sarah Wagner, and Brandon Flower, the undersigned **FINDS** that they should be dismissed as defendants in this action.

### 3. Josh Shapiro and William Stoycos

Plaintiff claimed that Josh Shapiro and William R. Stoycos, Pennsylvania Attorney General and Senior Deputy, conspired with other defendants. (ECF No. 1 at 14). He indicated that Stoycos conspired with Corbett during Plaintiff's post-conviction proceedings in Pennsylvania to charge Plaintiff for quoting the Bible. However, Plaintiff's claims were entirely without factual explanation or support, and the undersigned advised Plaintiff that attorneys in a State Attorney General's office were entitled to prosecutorial immunity as previously stated. The undersigned ordered Plaintiff to amend his complaint and supply facts to explain and support his allegations, showing what ties the defendants had to the State of West Virginia; whether they initiated any charges against Plaintiff; the outcome of the post-conviction proceedings; and any other information supporting his claims. (ECF No. 12 at 13). The undersigned admonished Plaintiff that conclusory statements and displeasure with the outcome of unrelated court proceedings did not state a viable cause of action under § 1983. (*Id.*).

In his amended complaint, Plaintiff stated that he was "the target of many retaliations" by the Pennsylvania Office of Attorney General, especially Stoycos who threatened to prosecute him for Bible quotes. (ECF No. 16 at 12). According to Plaintiff, Shapiro and Stoycos are "Corbett's associates" and have a proven interest in obstructing justice to protect him. (*Id.*). Plaintiff elaborated that Stoycos allegedly sent two deputies to question him about Bible verses and a metaphor that his case would "end as a Greek tragedy for Stoycos" that Plaintiff used in his habeas filings, and the deputies threatened to arrest Plaintiff for terroristic threats. (*Id.* at 34). Overall, Plaintiff claimed that Shapiro and Stoycos were part of an elaborate conspiracy to frame him and obstruct him from filing lawsuits in order to protects their own positions, public image, and civil and

criminal liability. (*Id.* at 51, 52, 70-71).

Any claims against Shapiro and Stoycos in their prosecutorial capacities are not actionable in this lawsuit due to their prosecutorial immunity. Furthermore, Plaintiff fails to state a claim connecting the defendants to this jurisdiction or indicating that they violated his rights in any manner. Plaintiff asserts nothing more than a baseless conspiracy theory that Shapiro and Stoycos might have been involved in a plan to harm him. He readily admits that he has no actual evidence of a conspiracy, and it is all based on his own speculation. While Plaintiff is not obligated to prove his claims at this stage of litigation, he must assert sufficient facts against defendants to state a plausible cause of action. He fails to do so in this case. For those reasons, the undersigned **FINDS** that Shapiro and Stoycos should be dismissed as defendants in this action.

### D. Other Defendants

#### 1. Tom Corbett

In his complaint, Plaintiff accused Corbett of conspiring to retaliate against him. (ECF No. 1 at 8). However, he acknowledged that he has no factual basis to support his claims, had no direct evidence of a conspiracy, and was only inferring the existence of one. Thus, the undersigned ordered Plaintiff to amend his complaint to clearly state exactly when, where, and what actions were taken by Corbett to conspire against him; what information he has of a conspiracy; what constitutional rights of his were violated by Corbett; and what role, if any, Corbett played in the West Virginia charges against Plaintiff. (ECF No. 12 at 9).

In his amended complaint, Plaintiff stated that the retaliatory conspiracy followed the paradigm initiated by Corbett in order to cover up his scandals or misdeeds. (ECF No. 16 at 8). He proclaimed that Corbett and others planned to track and profile him "since

the day of his release on November 1, 2015," to find a way to frame him on sex charges and obstruct his lawsuits in order to protect their positions, public image, and civil and criminal liability. (*Id*. at 51).

Plaintiff does not describe any specific actions by Corbett that violated Plaintiff's rights, nor does he show minimum contact between Corbett and this judicial district to establish personal jurisdiction. Plaintiff's speculation that Corbett was the mastermind of a conspiracy that ultimately resulted in West Virginia charges is nothing more than unsupported conjecture. Plaintiff does not have any evidence that there was a conspiracy, or that Corbett was behind it. His theories of liability against Corbett are based solely on his own inferences. Plaintiff provides no basis for the Court to exercise jurisdiction over Corbett and fails to state a plausible claim against Corbett. For those reasons, the undersigned **FINDS** that Corbett should be dismissed as a defendant in this action.

### 2. Christopher Mahoney, Tammy Summerfield, Kimberly Butcher, David Parker, and Roseanna Bell

In his complaint, Plaintiff alleged that private citizens Christopher Mahoney, Tammy Summerfield, Kimberly Butcher, David Parker, and Roseanna Bell may have conspired with or been coerced by police, perhaps in exchange for a reward or incentive, to provide witness statements that portrayed Plaintiff in a negative light. (ECF No. 1 at 9-11). The undersigned ordered Plaintiff to amend his complaint to show how the individuals were state actors and provide specific factual allegations of how they deprived him of a constitutionally protected right. (ECF No. 12 at 10). The undersigned also reminded Plaintiff that he could not state a claim based merely on conclusory allegations, but he must present facts tending to show that the defendants were liable for a constitutional violation. (*Id*.). In his amended complaint, Plaintiff reiterated his blanket

statement that the witnesses were coerced and possibly compensated to "fabricate probable cause" as part of the retaliatory conspiracy. (ECF No. 16 at 48-50).

Private parties are not state actors under § 1983. *Dement v. Summers Cty. Courthouse*, No. 5:13-CV-08899, 2015 WL 461560, at *7 (S.D.W. Va. Feb. 3, 2015) (markings and citation omitted). There are four exclusive circumstances in which a private party can be deemed a state actor: "(1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen." *Davison v. Facebook, Inc.,* 370 F. Supp. 3d 621, 628 (E.D. Va.), *aff'd,* 774 Fed. Appx. 162 (4th Cir. 2019) (citing *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993)).

Plaintiff contends that the defendants were coerced by police to provide false witness statements as part of a retaliatory conspiracy against him. However, he does not assert any facts to demonstrate police coercion, or the existence of a retaliatory conspiracy. Plaintiff's conclusory claim that the witnesses conspired with the state appears to be based on his assumption that the witnesses could not possibly have provided such statements against him unless coerced to do so by the state. Plaintiff fails to show any circumstances that the witnesses acted under the color of state law, nor does he state any cognizable claim against them. Therefore, the undersigned **FINDS** that Christopher Mahoney, Tammy Summerfield, Kimberly Butcher, David Parker, and Roseanna Bell should be dismissed as defendants in this action.

### 3. City of Elkins and Elkins Police Department

In his complaint, Plaintiff asserted that the Elkins Police Department executed an unconstitutional custom of "stacking up phony charges by applying elements in willy-nilly, absurd, or hypertechnical manner, and fabricating misleading affidavits to falsely arrest." (ECF No. 1 at 2, 22-23). Plaintiff further accused the Elkins City Police and Randolph County State Troopers of coercing statements, misleading a judge, omitting content from affidavits of probable cause, facilitating malicious prosecution, and obstructing Plaintiff's pending lawsuits. (*Id.* at 19). Plaintiff later stated that it "appear[ed]" that (1) he was targeted for vindictive prosecution; and (2) the police coerced Kimberly Butcher to embellish a story against him. (*Id.* at 20-21). He explained that he sued the City of Elkins because it could be the proper defendant for allegations against city employees. (*Id.* at 14-15).

On initial screening of the complaint, the undersigned noted that Plaintiff did not assert a plausible claim because he provided only conclusory allegations and did not specify an unconstitutional policy or custom that the Elkins Police Department applied to him to violate his rights. (ECF No. 12 at 4). As the undersigned discussed, the only support that Plaintiff provided for his claim was that the Elkins Police Department charged an unidentified man in some unrelated case with theft of electricity for plugging in his cellphone. (*Id.*). The undersigned explained that, even if true, that one instance of an alleged unreasonable charge did not demonstrate the existence of a widespread policy or custom applied by the Elkins Police Department, nor did it show how it led to a deprivation of Plaintiff's constitutional rights. (*Id.*). Therefore, the undersigned ordered Plaintiff to amend his complaint "to provide **facts** showing the existence of an unconstitutional custom or policy, as well as **facts** demonstrating how that custom or

policy harmed Plaintiff." (*Id.*) (emphasis in original).

In his amended complaint, Plaintiff alleged that the Elkins Police Department "used an unconstitutional custom effectuated by its officers at Sept. 29, 2019 false arrest and malicious prosecution of Mr. Kokinda in conspiracy retaliation." (ECF No. 16 at 2). He specified that he sued the City of Elkins based upon a "municipal liability theory," considering the same facts as the Elkins City Police. (ECF No. 16 at 13).

The City of Elkins is the proper defendant for Plaintiff's claims against the Elkins Police Department because the police department is an arm of the city government. *Gaskins v. Wood Cnty.*, No. 2:19-CV-00472, 2021 WL 4558358, at *10 (S.D.W. Va. Aug. 24, 2021), *report and recommendation adopted,* No. 2:19-CV-00472, 2021 WL 4554666 (S.D.W. Va. Oct. 5, 2021) (citing *Tofi v. Napier*, No. 2:10-CV-01121, 2011 WL 3862118, at *4 (S.D.W. Va. Aug. 31, 2011) (holding that a city's police department is not a separate entity subject to suit, but instead is merely a subdivision of the city that created it)). Local governmental bodies can be sued under § 1983 for a federal constitutional deprivation only when the allegedly unconstitutional action was taken pursuant to an "official policy" or "custom." *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 532–33 (4th Cir. 2022) (markings and citations omitted). A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law. *Id.*

A municipality cannot be held vicariously liable under § 1983 solely because of an

alleged injury inflicted by its employees or agents; it can only be directly liable for its own unconstitutional acts. *Corbitt v. Baltimore City Police Dep't*, No. CV RDB-20-3431, 2022 WL 846209, at *4 (D. Md. Mar. 22, 2022). In other words, the doctrine of *respondeat superior* has no applicability under § 1983. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978). Importantly, an "unconstitutional custom is attributed to the government body when the 'duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees.'" *Reid v. Sandy*, No. 3:20-CV-166, 2022 WL 898720, at *7 (N.D.W. Va. Mar. 28, 2022) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987)). Therefore, isolated incidents of unconstitutional conduct by subordinate employees do not state a claim against a local government; rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice. *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003).

Here, Plaintiff indicates that the Elkins Police Department "used an unconstitutional custom effectuated by its officers at Sept. 29, 2019 false arrest and malicious prosecution of [Plaintiff] in conspiracy retaliation." (ECF No. 16 at 2). He further states that his lawyer advised him that failure to sign a fingerprint card was not a legitimate criminal charge, which shows a failure to train officers, and the police department is liable for padding up charges or filing false charges due to lack of training. (*Id.* at 27, 63). Although Plaintiff uses key phrases that are commonly associated with municipal liability, such as unconstitutional custom and failure to train officers, he only asserts facts of isolated actions that happened to him. Plaintiff does not supply any facts to indicate that official policies or customs caused a deprivation of his rights or that the

alleged injustices that he suffered ever happened to anyone else. Moreover, he provides no support for his "failure to train" theory.

Plaintiff alleges that Defendants engaged in an interstate conspiracy to oppress and retaliate against him. Yet, he provides no facts to indicate that the alleged "retaliatory conspiracy" was in accordance with a policy or custom of the City of Elkins. As such, he fails to allege sufficient facts to state a claim against the City of Elkins or the Elkins Police Department. The undersigned **FINDS** that the City of Elkins and Elkins Police Department should be dismissed as defendants in this action.

### 4. Wendy Perreault

In his amended complaint, Plaintiff named one new defendant, Wendy Perreault, the Sex Offender Registry Coordinator at the Vermont Crime Information Center. He stated that he inadvertently omitted Perreault from his original complaint, but she was implicated in it. (ECF No. 16 at 15). Plaintiff asserted that Perreault was the "central hub" of the retaliatory conspiracy against him, and she was helping Barron conduct illegal investigations based on false failure to register theories. (*Id.*). He claimed that she was also helping organize retaliations with Vermont officials and internationally under the color of law, misusing her position to carry out retaliations for Pennsylvania defendants. (*Id.*).

Plaintiff's claims against Perreault are deficient for the same reasons as Barron. He fails to show sufficient contact between Perreault and the Northern District of West Virginia to allow this Court to exercise personal jurisdiction. Perreault's alleged actions in Vermont do not confer this Court with jurisdiction over her. Although Plaintiff claims that Perreault was part of a conspiracy against him that culminated in West Virginia litigation, he states that he has no evidence of the conspiracy, and it is based on his own

"deductions." Plaintiff also fails to show that Perreault was involved in the alleged conspiracy. Plaintiff was given ample opportunity to articulate factual support for his claims that defendants conspired to violate his rights, but he has failed to do so. He indicates that the Vermont Sex Offender Registry records show Perreault's involvement in the retaliatory conspiracy, but he does not identify any specific evidence in support of that allegation, or explain how the records show that Perreault violated his rights. Moreover, Plaintiff's SORNA conviction has not been overturned. To the extent that Plaintiff asserts that Perreault was responsible for that charge, Plaintiff cannot assert such claim unless his conviction is invalidated. For all of those reasons, the undersigned **FINDS** that Perreault should be dismissed as a defendant in this action.

### E.  Stay and Abeyance

As a final matter, Plaintiff asserts no basis for a stay and abeyance in this case. He seeks a stay because he would like to "dispose" of his federal criminal cases and possibly obtain an attorney in this action. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *N. Carolina Div. of Sons of Confederate Veterans, Inc. v. N. Carolina Dep't of Transportation,* No. 1:21CV296, 2022 WL 604173, at *3 (M.D.N.C. Mar. 1, 2022) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In determining whether to grant or deny a request to stay proceedings, the Court must "balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Id.* (quoting *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013)). The Court should consider three main factors: (1) the interests of judicial economy, (2) the hardship and inequity to the moving party in the absence of a stay, and (3) the potential prejudice

to the non-moving party in the event of a stay. *Id.* (citing *Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas*, LLC, 141 F. Supp. 3d 428, 452 (M.D.N.C. 2015)). "The moving party must establish that the first and second factors constitute "clear and convincing circumstances outweighing" the third factor." *Id.* (citing *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983)).

Here, the interests of judicial economy and hardship of prolonging the case against defendants argues against issuing a stay. Plaintiff does not offer any reasons which would justify holding his case in abeyance. He contends that he wishes to conclude his federal criminal matters, but he has been convicted of the SORNA charge and he fails to show how the child pornography charge has any relation to the remaining defendants in this case. Moreover, Plaintiff has filed numerous detailed *pro se* pleadings and describes himself as being extremely intelligent and versed in the law. Therefore, the undersigned **FINDS** that the Motion to Issue Stay and Abeyance should be denied. (ECF No. 14).

## IV. <u>Proposal and Recommendation</u>

For the stated reasons, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings herein and **RECOMMENDS** that the presiding District Judge **DENY** the Motion to Issue Stay and Abeyance of Case, (ECF No. 14), and **DISMISS** the following defendants from this action: Patrolman K.A. Shiflett; Billy Butcher; DUSM Michael Barron; S.I. John Hare; Andy Balint; Nikki Doe; Mark Hornak; Cynthia Reed Eddy; Michael Aloi; Thomas Kleeh; Jan E. DuBois; Lackta Poling; Jane Doe #1; Michael Parker; Bill Powell; Stephen Warner; Sarah Wagner; Brandon Flower; Josh Shapiro; William Stoycos; Tom Corbett; Christopher Mahoney; Tammy Summerfield; Kimberly Butcher; David Parker; Roseanna Bell; City of Elkins, West Virginia; Elkins Police Department; and Wendy Perreault.

36

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure. Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Johnston and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff.

**FILED:** May 18, 2022

Cheryl A. Eifert
United States Magistrate Judge