IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARTINSBURG DIVISION

JASON STEVEN KOKINDA,

        Plaintiff,

v.                                              CIVIL ACTION NO.   3:21-cv-00154

COPRL. T.H. FOSTER, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Jason Steven Kokinda's ("Plaintiff") motion to reconsider. (ECF No. 95.) For the reasons more fully explained below, the motion is **DENIED**.

### I.   BACKGROUND

Plaintiff is a thrice-convicted sex offender currently serving federal time for failing to update his SORNA[1] registration. *United States v. Kokinda*, 93 F.4th 635 (4th Cir. 2024). He says his convictions are the product of a 17-year long, multi-state conspiracy to retaliate against him for threatening to expose then-Pennsylvania Governor Tom Corbett's supposed corruption. (ECF No. 16 at 8, 11, 18–19.) This conspiracy allegedly includes the likes of Governor Corbett, Pennsylvania's former Attorney General and Deputy Attorney General, federal judges in Pennsylvania and West Virginia, United States Marshals in Pennsylvania, Vermont, and West

---

[1] Sex Offender Registration and Notification Act, § 18 U.S.C. 2250.

Virginia, and federal prosecutors, local authorities, and private parties here in West Virginia. (*Id.* at 1–15.)

Hoping to "expose" this alleged conspiracy, Plaintiff filed suit on September 23, 2021. (ECF No. 1.) His complaint was 25 pages long but contained no factual allegations supporting his claims; legal conclusions were all it had. (*See id.*) Magistrate Judge Eifert ordered Plaintiff to amend his complaint and add factual allegations explaining who had harmed him and how.[2] (ECF No. 12.) Plaintiff responded with a 73-page amended complaint. (ECF No. 16.) In it, he airs out the origins of the supposed conspiracy and runs through the many "false" accusations and "malicious" arrests he has endured over the years—culminating with the Elkins Police Department arresting him for allegedly groping a 12-year-old girl. (*See generally id.*)

But the amended complaint was still laden with legal conclusions and conjecture, and it lacked any underlying factual allegations stating viable claims.[3] As a result, Magistrate Judge Eifert recommended that this Court dismiss 30 defendants from this case.[4] (ECF No. 18.) Her reasons for doing so varied. Some defendants, she found, were absolutely immune from suit; others lacked any connection to West Virginia, so the Court lacked jurisdiction over them. (*Id.* at 13–16, 19–29, 34–35.) And even among those defendants amenable to suit before this Court, Magistrate Judge Eifert found that Plaintiff had pled insufficient facts to state plausible claims against many of them as required by *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (*Id.* at 11–13, 16–19, 29–34.)

---

[2] This matter is referred to Magistrate Judge Eifert for submission of proposed findings and a recommended disposition. (ECF No. 10.)

[3] Though the exact contours of Plaintiff's purported claims are less than clear, a fair reading of his pleadings evince an intent to bring Fourth Amendment claims for malicious prosecution and false arrest, a *Monell* claim for failure-to-train, and an amorphous conspiracy claim, all of which are brought by way of 42 U.S.C. § 1983.

[4] Where, as here, a prisoner seeks redress from a government entity or official, the Court is required to review the complaint and dismiss any portion of it that fails to state a claim for relief. 28 U.S.C. § 1915A.

Plaintiff objected. He first filed a nine-page list of objections accompanied by a 32-page memorandum of law in support. (ECF Nos. 24 & 24-1.) Then, for good measure, Plaintiff supplemented his already 41-page filing with another seven-page "Nunc Pro Tunc Supplemental Memorandum of Law in Support" of his objections. (ECF No. 38.)

The Court considered all 48 pages of Plaintiff's briefing but ultimately found his objections meritless. (ECF No. 83.) This was so, the Court explained, because Plaintiff's amended complaint relied heavily on Plaintiff's "conclusory statements and far-fetched allegations, supported [by only] his own theories and conjecture." (*Id.* at 4.) The Court thus overruled Plaintiff's objections, adopted Magistrate Judge Eifert's proposed recommendation and findings, and dismissed those 30 defendants. (*Id.* at 11.)

Unhappy with this result, Plaintiff has now filed a motion to reconsider.[5] (ECF No. 95.) He asks the Court to reverse course and sustain his objections for a variety of reasons: he says the Court overlooked Supreme Court precedent that supports his conspiracy theory; he allegedly has new evidence showing his allegations are plausible; and he says the Court also committed clear legal error in its prior analysis. (*Id.*) Two defendants—Defendant Boatwright and Defendant Foster—filed a joint response in opposition. (ECF No. 98.) Plaintiff then filed a reply, making the matter ripe for adjudication. (ECF No. 100.)

## II.     LEGAL STANDARD

Rule 54(b) of the Federal Rules of Civil Procedure governs motions to reconsider interlocutory orders.[6] *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1469–70 (4th Cir.

---

[5] In his motion for reconsideration, Plaintiff also asks the Court to stay this case. (ECF No. 95 at 2.) The Court has, however, already granted and lifted a stay by separate Order for the same reasons Plaintiff presses in the present motion. (ECF No. 103.) The Court thus **DENIES** that request as moot.

[6] The Court notes at the outset that Defendants claim the Federal Rules do not permit reconsideration of interlocutory

3

1991) (finding that, under Rule 54(b), "[a]n interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment"). Though Rule 54(b) grants courts broad discretion to reconsider prior rulings to ensure justice is done, that discretion "is not limitless." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). In the Fourth Circuit, "courts . . . cabin[] revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *Id.*; *see also U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) ("[A] court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case."). Thus, prior rulings cannot be disturbed unless there has been "(1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; [or there becomes] (3) [a] need to correct clear or manifest error in law or fact, to prevent manifest injustice."[7] *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003).

With that said, motions to reconsider are heavily disfavored. They are "an extraordinary [request] which should be used sparingly." *Pac. Ins. Co.*, 148 F.3d at 403. Parties may not file a motion to reconsider merely to rehash arguments that have already been raised and rejected. *Carlson*, 856 F.3d at 326; *Regan v. City of Charleston*, 40 F. Supp. 3d 698, 702 (D.S.C. 2014). Nor may parties use a motion to reconsider to make new "arguments which could have been raised" earlier but were not. *Pac. Ins. Co.*, 148 F.3d at 403. Simply put, there is no second bite at the

---

rulings. (ECF No. 98 at 3 (cherry-picking quotes from non-binding authorities in different procedural postures discussing different Rules of Civil Procedure).) However, given the well-developed and decades-old, binding caselaw cited herein, the Court finds Defendants' statement misleading, to put it charitably. Counsel would thus be well-advised to recall that they owe a duty of candor to the Court—a duty that is not precatory and may not be cavalierly cast aside at counsels' pleasure. W. Va. R. Prof. Cond. 3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of . . . law to a tribunal.").

[7] This standard seemingly mirrors that applicable to motions to reconsider final orders under Rule 59(e). There is, however, one difference: the Rule 54(b) standard "departs from [the Rule 59(e)] standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of 'new evidence not available at trial.'" *Carlson*, 856 F.3d at 325 (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

apple. *Wooten v. Commonwealth of Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016). Courts' interlocutory rulings must stand unless one of the three narrow exceptions identified above applies. *Carlson*, 856 F.3d at 325 ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009))); *see also Norfolk S. Ry. v. Nat'l Union Fire Ins. of Pittsburgh*, 999 F. Supp. 2d 906, 918 (S.D. W. Va. 2014) ("[I]t is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through—rightly or wrongly.").

### III. DISCUSSION

As noted above, Plaintiff does not argue that there has been an intervening change in law sufficient to up-end this Court's prior ruling. He instead hangs his hat on the latter two law-of-the-case exceptions: he claims to have newly discovered evidence, and he also believes the Court committed clear error that caused manifest injustice. (ECF No. 95-1.)

A. Newly Discovered Evidence

The Court can swiftly dispose of Plaintiff's first contention. He claims that the Court erred in dismissing private, non-state actors from this case—a civil rights case brought under 42 U.S.C. § 1983. (ECF No. 95-1 at 6–8.) This was error, Plaintiff says, because he now has new evidence showing that those private persons coordinated with and were paid by law enforcement to make false statements about him, thereby making them state actors. (*Id.*)

However, Plaintiff has already made these exact allegations, and the Court has already found them insufficient. Indeed, in his amended complaint, Plaintiff alleged that these private actors were "coerced and plausibly provided reward money to help [law enforcement] fabricate

5

probable cause against" Plaintiff.  (ECF No. 16 at 9–10.)  The Court found those allegations insufficient to state a § 1983 claim against private individuals.  (ECF No. 83 at 7–8.)  Now, Plaintiff claims that some of these private actors admitted to "coordinating with police" to get him.  (ECF No. 95-1 at 6.)  He also claims to have new evidence "that the Govt. now pays . . . private actors up to millions of dollars a year to make cases based on their [false] testimony."[8]  (ECF No. 95 at 2.)  As should be clear, Plaintiff is using his motion to reconsider as "a vessel [to relitigate the sufficiency of] the very [allegations] that" the Court found "lacking in" his amended complaint.  *Carlson*, 856 F.3d at 326.  Plaintiff thus has no new evidence worthy of disturbing this Court's prior ruling.

  B.  Clear Error

1.

Plaintiff also contends that the Court's prior holding, wherein it found that Plaintiff's amended complaint was conclusory and thus failed to state a claim, was clear error that caused manifest injustice.  A finding of clear error requires a "definite and firm conviction that a mistake has been committed."  *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  This does not mean "just maybe or [even] probably wrong."  *Franchot*, 572 F.3d at 194.  Clear error requires the "prior decision . . . [to] strike [the Court] with the force of a five-week-old, unrefrigerated dead fish."  *Id.*  " It must be dead wrong."  *Id.* (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988))  Manifest injustice is similarly demanding.  *In re Yankah*, 514 B.R. 159, 166 (E.D. Va. 2014).  It requires showing "a fundamental flaw in the court's decision that without

---

[8] Plaintiff also claims, albeit without citation, that "[s]uch methods have statistically become the leading cause of wrongful convictions."  (ECF No. 95 at 2.)

correction would lead to a result that is both inequitable and not in line with applicable policy." *Id.* (quoting *Westerfield v. United States*, 366 F. App'x 614, 619 (6th Cir. 2010)).

2.

Plaintiff offers three supposed faults in the Court's prior ruling. None are clear error. Plaintiff first takes issue with the Court's conclusion that his amended complaint was conclusory and lacked sufficient factual allegations to state a claim. He says he "has unquestionably expounded a voluminous fact-intensive history of epic retaliations by out-of-state defendants sufficiently coordinated to constitute a conspiracy to violate his civil rights." (ECF No. 95-1 at 2.) He is wrong. Plaintiff's 73-page complaint relies almost exclusively on legal conclusions and conjecture. Where he does make the occasional factual allegation, the allegation is so far-fetched that it "is [im]plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). (*See, e.g.*, ECF No. 16 at 29, ¶ 47 (alleging that Pennsylvania's then-Governor "pressured his agents to fabricate as many illegal arrests as possible to help the . . . [then-Pennsylvania] Attorney General win [a] gubernatorial race"); *see also id.* at 36–37, ¶¶ 86–89 (alleging that someone coerced Miss Vermont into convincing Plaintiff to take a selfie with her, only to turn around and falsely accuse Plaintiff of sexually assaulting her).

Plaintiff next argues that *Hartman v. Moore*, 547 U.S. 250 (2006), supports his far-flung conspiracy theories. (ECF No. 95-1 at 4–6.) It does not. In *Hartman*, the Supreme Court recognized that some government officials, disgruntled after being publicly criticized by a constituent, may retaliate by pressuring prosecutors into filing baseless charges against their outspoken constituent. 547 U.S. at 265. However, *Hartman* requires plausible factual allegations that show a conspiracy to retaliate for public criticism; Plaintiff has not pled any. *See*

7

*id.* at 259–63. So *Hartman* may provide the framework for Plaintiff's case, but he has failed to fill in that framework with plausible allegations showing a retaliatory conspiracy against him.

Finally, Plaintiff contends that the Court erred in dismissing the City of Elkins and the Elkins Police Department, finding that he had failed to state a *Monell* failure-to-train claim against either. (ECF No. 95-1 at 10–11.) Wrong again. For one thing, the Elkins Police Department is not a distinct legal entity subject to suit under § 1983 or, by extension, *Monell*. *Tofi v. Napier*, No. 2:10-cv-01121, 2011 WL 3862118, at *4 (S.D. W. Va. Aug. 31, 2011). For another, as it relates to the City of Elkins, his amended complaint failed to articulate any factual allegations to support his failure-to-train theory; he simply pled buzzwords and legal conclusions, which "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. In his motion to reconsider, Plaintiff claims that he "pled [personal knowledge] of several similarly situated prisoners" who were injured because the City of Elkins failed to train officers how to determine probable cause. (ECF No. 95-1 at 10–11.) He did not. Perhaps recognizing that he lacks facts to back this up, Plaintiff once again asks the Court for "discovery to explore the extent of lawsuits, misconduct reports, and dismissed cases that may" bolster his claim. (*Id.* at 11.) This the Court cannot do, for the law is clear: legal conclusions, unsupported by factual allegations, "do[] not unlock the doors of discovery."[9] *Iqbal*, 556 U.S. at 678–79.

---

[9] Plaintiff also believes that *Jafary v. City of Beckley*, No. 5:20-cv-00647, 2021 WL 1792139 (S.D. W. Va. May 5, 2021), requires this Court to change course and send his claim to discovery. (ECF No. 95-1 at 11.) The Court disagrees. "[A] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 n.1 (4th Cir. 2017) (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)). In any event, even if *Jafary* did bind the Court, that case is easily distinguishable: unlike Plaintiff—who pled no facts—the plaintiff in *Jafary* identified two particular instances where the municipality-defendant's officers allegedly acted improperly, thus properly alleging "the City's pattern and practice of deliberate indifference to the risks of constitutional violations by its officers." 2021 WL 1792139, at *8.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's motion to reconsider is **DENIED**.  (ECF No. 95.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     March 13, 2024

_____
THOMAS E. JOHNSTON, CHIEF JUDGE