## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

### MARTINSBURG DIVISION


JASON STEVEN KOKINDA,

          Plaintiff,

v.                                                              CIVIL ACTION NO.   3:21-cv-00154

COPRL. T.H. FOSTER, et al.,

          Defendants.


### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Jason Steven Kokinda's ("Plaintiff") motion to reconsider.  (ECF No. 163.)   For the reasons more fully explained below, the motion is **DENIED**.

### I.     BACKGROUND

Plaintiff is a thrice-convicted sex offender currently serving federal time for failing to update his SORNA[1] registration.  *United States v. Kokinda*, 93 F.4th 635 (4th Cir. 2024).   He says his convictions are the product of a 17-year long, multi-state conspiracy to retaliate against him for threatening to expose then-Pennsylvania Governor Tom Corbett's supposed corruption. (ECF No. 16 at 8, 11, 18–19.)   This conspiracy allegedly includes the likes of Governor Corbett, Pennsylvania's former Attorney General and Deputy Attorney General, federal judges in Pennsylvania and West Virginia, United States Marshals in Pennsylvania, Vermont, and West

---

[1] Sex Offender Registration and Notification Act, § 18 U.S.C. 2250.

Virginia, and federal prosecutors, local authorities, and private parties here in West Virginia.   (*Id.* at 1–15.)

Hoping to "expose" this alleged conspiracy, Plaintiff filed suit on September 23, 2021. (ECF No. 1.)   The resulting litigation has spanned over the course of four years.   The present matter involves Magistrate Judge Reeder's most recent Proposed Findings and Recommendations ("PF&R").   (ECF No. 159.)   Magistrate Judge Reeder recommended that this Court deny Plaintiff's Motion to Amend (ECF No. 140); grant Defendants' Motion for Summary Judgment (ECF Nos. 126, 127); and deny Defendants' Motion for Stay and Motion to Strike as moot (ECF Nos. 141, 139).   Magistrate Judge Reeder further recommended that this Court dismiss Plaintiff's Amended Complaint.   (ECF No. 159.)   Plaintiff objected, (*see* ECF No. 160.)

The Court considered Plaintiff's briefing but ultimately found his objections meritless. (*See generally* ECF No. 161 at 13–18.)   This was so, because many of Plaintiff's objections bore little relation to the PF&R.   (*Id*. at 11.)   Instead, these objections were largely based on speculative/conspiratorial assertions and constituted attempts to revive claims that had already been adjudicated within unrelated orders.   (*Id*.)   Accordingly, the Court overruled Plaintiff's objections, adopted Magistrate Judge Reeder's PF&R in part, and dismissed the case.   (*Id*. at 18.)

Unhappy with this result, Plaintiff has now filed a motion to reconsider.   (ECF No. 163.) He asks the Court to reconsider on three grounds: (1) that the Court incorrectly held that Plaintiff received sufficient notice to file timely objections to a prior PF&R, (ECF No. 122); (2) that the Court failed to apply the proper analytical framework to his malicious prosecutions and false arrest claims; and (3) that the Court disregarded the Vermont Sex Offender Registry ("SOR") notes and the retaliatory scheme underlying all of his West Virginia cases.   (ECF No. 163-1 at 4–17.)   Two

defendants—Defendant Boatwright and Defendant Foster—filed a joint response in opposition. (ECF No. 164.)   Plaintiff then filed a reply, making the matter ripe for adjudication.   (ECF No. 165.)

## II.    LEGAL STANDARD

Rule 54(b) of the Federal Rules of Civil Procedure governs motions to reconsider interlocutory orders.   *Fayetteville Invs. v. Com. Builders, Inc*., 936 F.2d 1462, 1469–70 (4th Cir. 1991) (finding that, under Rule 54(b), "[a]n interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment").   Though Rule 54(b) grants courts broad discretion to reconsider prior rulings to ensure justice is done, that discretion "is not limitless."   *Carlson v. Bos. Sci. Corp*., 856 F.3d 320, 325 (4th Cir. 2017).   In the Fourth Circuit, "courts . . . cabin[] revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case."   *Id*.; *see also U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) ("[A] court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case.").   Thus, prior rulings cannot be disturbed unless there has been "(1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; [or there becomes] (3) [a] need to correct clear or manifest error in law or fact, to prevent manifest injustice."   *Am. Canoe Ass'n v. Murphy Farms, Inc*., 326 F.3d 505, 514 (4th Cir. 2003).

With that said, motions to reconsider are heavily disfavored.   They are "an extraordinary [request] which should be used sparingly."   *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co*., 148 F.3d 396, 403 (4th Cir. 1998).   Parties may not file a motion to reconsider merely to rehash arguments that have already been raised and rejected.   *Carlson*, 856 F.3d at 326; *Regan v. City of Charleston*, 40 F. Supp. 3d 698, 702 (D.S.C. 2014).   Nor may parties use a motion to reconsider to make new

"arguments which could have been raised" earlier but were not.  *Pac. Ins. Co*., 148 F.3d at 403.

Simply put, there is no second bite at the apple.  *Wooten v. Commonwealth of Virginia*, 168 F.

Supp. 3d 890, 893 (W.D. Va. 2016).  Courts' interlocutory rulings must stand unless one of the

three narrow exceptions identified above applies.  *Carlson*, 856 F.3d at 325 ("[W]hen a court

decides upon a rule of law, that decision should continue to govern the same issues in subsequent

stages in the same case."  (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009)).

### III.    DISCUSSION

Plaintiff does not argue that there has been an intervening change in law sufficient to upend

this Court's prior ruling.  Plaintiff instead claims that "[t]he entirety of [his] proceedings are

fraudulent," and that this is the result of either "bribery or gross incompetence of the judicial

staff[.]"  (ECF No 163-1 at 1.)  As such, Plaintiff claims his case may be reopened under

FED.R.CIV.P. 60(b)(3).  (*Id*.)  Although many of Plaintiff's arguments to support reconsideration

lack an identifiable legal basis, the Court will address each in turn.

### A.  Denial of Request for an Extension to File Objections to PF&R

First, Plaintiff argues that the Court incorrectly interpreted the letter mailed by Plaintiff,

(ECF No. 121), as evidence that he was at FCI-Otisville and received adequate notice to object to

a previously entered PF&R, (ECF No. 122).  (ECF No. 163-1 at 4).  The Court disagrees.

This argument has been excessively addressed at this point.  In fact, the Court addressed

this issue when it denied Plaintiff's untimely motion for an extension, (ECF No. 133 at 2 n.1), and

later reaffirmed its position within a subsequent memorandum opinion and order adopting a PF&R,

(*see* ECF 161 at 16).  Plaintiff has not raised any new legal arguments to persuade the Court to

change its position that he received adequate notice to file timely objections but instead is asking

4

the Court to re-think something it has already thought through, numerous times.  *See Norfolk S. Ry. v. Nat'l Union Fire Ins. of Pittsburgh*, 999 F. Supp. 2d 906, 918 (S.D. W. Va. 2014) ("[I]t is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through—rightly or wrongly.").

Moreover, despite Plaintiff's regurgitation of previously failed arguments, Plaintiff's complaints about not having sufficient notice simply do not comport with facts on the docket.   On April 15, 2023, Plaintiff notified the Clerk that his new address was FCI-Otisville.  (ECF No. 121.)  On May 10, 2023, Magistrate Judge Eifert entered her PF&R.  (*See* ECF No. 122.)  Then, on May 17, 2023, a return receipt indicated that the mail was delivered to FCI-Otisville, in accordance with the last address provided by Plaintiff to the Clerk's office.  (ECF No. 123.) Nevertheless, about one month after objections were due, Plaintiff filed his motion for an extension.   (ECF No. 124.)

Plaintiff now claims that the Court has "fabricate[d] a procedural bar[,]" and is depriving him of Due Process and Equal Protection by failing to provide him notice to file objections.   (ECF No. 163-1 at 5 n.1.)   It is Plaintiff's responsibility to timely update the clerk with any changes to his address, and he failed to do so.  S.D. W. Va. LR Civ P 83.5 ("A pro se party must advise the clerk promptly of any changes in . . . address[.]")   Accordingly, the Court again finds that Plaintiff had sufficient notice to offer him the opportunity to object to the PF&R.

### B.  Allegations of Malicious Prosecutions and False Arrests

#### i.  Obstruction Charges

Plaintiff next asserts the Court's "second major mistake" is refusing to apply the analytical framework used in *Hupp v. Cook*, 931 F.3d 307 (4th Cir. 2019) when addressing his allegations of

malicious prosecution and false arrest relating to his obstruction charges.   (ECF No. 163-1 at 6.) This argument stems from the Magistrate Judge's summary judgment analysis, in which the Magistrate Judge articulated the standard governing Plaintiff's malicious prosecution claims. (ECF No. 159 at 22–24.)   Specifically, the Magistrate Judge explained that Plaintiff could establish such a claim by satisfying the test set forth in *Franks v. Delaware*, 438 U.S. 154, 171 (1978).   (*Id.*)[2]

This Court agreed with the Magistrate Judge and also applied the *Franks* test.   (ECF No. 161 at 10–13.)   Plaintiff argues this was error, because *Franks* concerns the suppression of evidence obtained through a defective warrant, whereas *Hupp* addresses how a defendant may undermine a probable cause showing when an officer's narrative is misleading.   (ECF 163-1 at 11.)   This argument is unpersuasive.

The Magistrate Judge and this Court properly applied the *Franks* analysis because Plaintiff's allegations directly challenge the truthfulness and completeness of the officers' affidavits.   Specifically, Plaintiff claimed that the arresting officers "omitted material context from their affidavits to falsely arrest him," and in turn "conduct[ed] an unlawful search and seizure of" Plaintiff's car.   (ECF No. 159 at 25.)   *Franks* addresses precisely this issue.   *See Franks*, 438 U.S. at 171.   In *Franks*, the Supreme Court held that the Fourth Amendment

---

[2] To meet the *Franks* standard, Plaintiff needed to put forward evidence that created a genuine dispute of material fact as to one of the following: 1) that Defendants deliberately made material false statements in their warrant application affidavits; 2) that Defendants had a "reckless disregard for the truth" in the facts alleged in their warrant application affidavits; 3) that Defendants omitted material facts from their affidavits with the intent to mislead the magistrate; or 4) that Defendants asserted facts "with reckless disregard of whether" those facts would mislead a magistrate.   *Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir. 2007) (explaining the *Franks* test).)   Because this analysis has already been conducted twice and no new circumstances have been presented, the Court declines to undertake the same review for a third time.

guarantees Defendants the right to challenge the veracity of a warrant affidavit if they can show that the warrant included intentional or reckless falsehoods.   *Id*. at 155–56.

Even if this Court were to apply the *Hupp* analysis, Plaintiff's argument still fails.   In *Hupp*, the central dispute was whether probable cause existed to support the defendant's prosecution.   *See Hupp*, 931 F.3d at 324 (holding that a probable cause finding cannot be predicated on false statements made in the complaint.)   The Court conducted a factually intensive inquiry into the actions and post-arrest accounts of the arresting officers.   *Id*.   The Court compared those accounts against contradictory evidence, including: (1) the plaintiff's own testimony, (2) the criminal complaint, and (3) video evidence of the arrest.   *Id*.   This conflicting evidence created a factual dispute regarding whether probable cause existed.   *Id*.   Thus, under either the *Hupp* or *Franks* framework, a plaintiff must present evidence sufficient to create a material dispute of fact undermining the probable cause for their arrest.   *See Hupp*, 931 F.3d at 324; *Franks*, 438 U.S. at 171.   The Magistrate Judge determined that Plaintiff offered no evidence of the kind, and this Court agreed.   (ECF No. 161 at 10–11.)

Nevertheless, Plaintiff continues to allege that the obstruction charges are "plainly lacking" probable cause.   (ECF No. 163-1 at 6–8.)   Specifically, Plaintiff contends the obstruction charges are predicated on him briskly walking away from the arresting officer, asking for an attorney, and refusing to sign a fingerprint card.   (*Id*. at 6–7.)   These allegations do not demonstrate fraud or misconduct on the part of the officers.   Rather, Plaintiff's argument is limited to the assertion that "a reasonably well-trained officer would not consider such petty inconveniences obstruction of justice."   (*Id*. at 8.)

Accordingly, nothing Plaintiff suggests indicates that there was affirmative evidence creating a genuine issue of material fact.   Instead, his allegations amount to nothing more than mere speculation.   Accordingly, the Court reaffirms its conclusion that Plaintiff failed to produce sufficient evidence to withstand summary judgment.   *See United States v. Moody*, 931 F.3d 366, 370–71 (4th Cir. 2019) (stating that the *Franks* standard cannot be met with conclusory allegations and must be proven by affidavits or other evidence that the statements at issue are objectively false and the officer subjectively acted with intent to mislead, or with reckless disregard for whether the statements would mislead, the magistrate.)

    ii.      *Sexual Abuse, Failure to Register, and Possession of Illicit Material*

The remaining allegations are all attempts to relitigate the factual basis underlying his sexual abuse, failure to register as a sex offender, and possession of illicit material charges.   (*See* ECF No. 163-1 at 8–17.)   For example, Plaintiff seems to contend that "touch[ing] a juvenile girl's buttocks" was not severe enough to prosecute him on a sexual abuse charge.   (*Id*. at 8.)   More broadly, Plaintiff disputes the officers' and witnesses' accounts of the incident.   (*Id*.)   According to Plaintiff, all of these parties, including the minor victim's family, were allegedly working with the police as part of an elaborate set up.   (*Id*. at 9.)

Specifically, Plaintiff argues that the Court's previous analysis of this charge contradicts *Hupp* because the Court declined to treat his sworn affidavit as sufficient evidence to withstand summary judgment because he needed to provide independent corroborative evidence.   (*Id*. at 10.) Plaintiff believes his assertion that he overheard the victim's friend saying he'd be arrested days before his actual arrest was "enough personal knowledge of itself to create evidence of a pretextual conspiracy and ward off summary judgment on all charges."   (ECF No. 163-1 at 10 n.4).

8

Plaintiff claims these firsthand accounts are similar to those in *Hupp*, in which the defendant "only had her testimony against the word of police[.]"  (*Id.*)

This argument mischaracterizes *Hupp*.  In *Hupp*, the Court relied on multiple sources of contradictory evidence that collectively created factual disputes regarding the officers' account of events.  *See Hupp*, 931 F.3d at 324.  Here, by contrast, Plaintiff relies almost exclusively on his own conclusory allegations that do not contradict specific factual representations or identify evidence that officers submitted materially misleading warrant affidavits.  In fact, as Defendants correctly point out, Plaintiff has failed to conduct any discovery over the course of three years.  (ECF No. 164 at 5.)  Accordingly, these assertions are not supported by evidence and cannot create a genuine issue of material fact.

Next, Plaintiff seeks to revive his malicious prosecution claims against Corporal S.P. Miller ("Corporal Miller") and PTLM C. Boatwright ("C. Boatwright") in relation to his failure to register charges.  (ECF No. 163-1 at 11.)  This Court previously dismissed Plaintiff's malicious prosecution claims against Corporal Miller (pursuant to a motion to dismiss) and C. Boatwright (pursuant to a motion for summary judgment).  (*See* ECF Nos. 116, 161.)

Nevertheless, Plaintiff asserts that under the *Hupp* framework, the failure to update charges filed by Corporal Miller were "plainly lacking" in probable cause.  (ECF No. 163-1 at 12.)  However, Plaintiff's new allegations do little more than offer the same legal conclusions offered in his previous complaints.  He pleads no new facts supporting a cognizable claim for relief.  Instead, he merely attempts to reframe the legal significance of facts already alleged.  Averring bare conclusionary statements cannot sufficiently plead a cause of action in the first place.  *See Walker v. Prince George's County*, 575 U.S. 426, 431 (4th Cir. 2009) (citing *Ashcroft v. Iqbal*,

560 U.S. 662, 678 (2009) ("As the Supreme Court has recently explained, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to plead a claim."). Accordingly, because Plaintiff previously failed to meet the pleading standard under Rule 12(b)(6), and offers no new factual support, reconsideration is unwarranted.

Similarly, Plaintiff alleges that the warrant filed by C. Boatwright was based on false charges and speculation that Plaintiff might be an unregistered sex offender in the area. (*Id*. at 11.) Again, Plaintiff has not provided new information indicating that C. Boatwright provided false information in his affidavit. Instead, Plaintiff reasserts previous conspiratorial claims, bare factual allegations, and claims the Court's previous rulings were "garbage, not worth the paper they are written on." (ECF No. 163-1 at 13.)[3] Consequently, Plaintiff failed to assert a genuine issue of material fact. *See Allen v. Louis*, 2015 WL 6125520 at *4 (D.S.C. Oct. 15, 2015), aff'd, 633 F. App'x 594 (4th Cir. 2016) (finding that the plaintiff offered nothing more than conjecture that the officer provided false information for the search warrant, and unsupported assertions are insufficient to withstand summary judgment).

Lastly, Plaintiff argues that the child pornography charge was wholly lacking in probable cause under the nationwide, narrowly defined meaning of "possession." (ECF No. 163-1 at 14.) According to Plaintiff, this is because the alleged data consisted of inaccessible "junk" files on an inoperable device and therefore did not constitute "possession." (*Id*.) This argument is unavailing. These are simply bare assertions that do nothing to explain exactly how the previous

---

[3] Notably, Plaintiff reasserts his reliance on a novel theory that the "only legitimate trigger" for registering in West Virginia is by "staying more than fifteen continuous days in any particular county." (ECF No. 163-1 at 12 (citing *State v. Beegle*, 237 W. Va. 692, 533 n.6 (2016)).) This argument has already been considered and rejected by the Court in its prior Memorandum Opinion and Order. (ECF No. 161 at 15.) Plaintiff offers no new authority, facts, or persuasive reasoning that would warrant revisiting that determination.

decisions by the Magistrate Judge, (ECF No. 122 at 25–26), and this Court (ECF No. 161 at 6), erred in analyzing Plaintiff's possession of child pornography prosecution.    As Judge Copenhaver has found, "continu[ing] to rely on bare assertions" to challenge the Court's prior conclusions will not meet the standards of clear error or manifest injustice.    *See Grace v. Sparks*, 2016 WL 8200508, at *1 (S.D. W. Va. July 2016).

### C. SOR Notes

Lastly, Plaintiff argues that the Court "wholly ignores the Vermont SOR" and continues to act "deliberately obtuse" regarding the alleged retaliatory scheme underlying all of his West Virginia cases.    (ECF No. 163-1 at 17.)    Specifically, Plaintiff contends that the Vermont SOR notes uncover a conspiracy to bring false charges against him in retaliation for his Pennsylvania lawsuits.    (*Id*.)    As Defendants rightfully note, the Vermont SOR has never been authenticated, nor has discovery been conducted with respect to these notes, and they have no relation to the existing defendants in this case.    (ECF No. 164 at 6.)    Accordingly, Plaintiff has failed to establish how these notes create a genuine dispute of material fact.    *See JKC Holding Co. v. Washington Sports Venture, LLC*, 264 F.3d 459, 465 (4th Cir. 2001) ("Mere speculation by the nonmovant cannot create a genuine issue of material fact.").

Plaintiff also asserts two grounds in which the Court has jurisdiction over out of state defendants.    These include: (1) the conspiracy theory of jurisdiction; and (2) an "effects test." (ECF No. 163-1 at 18.)

First, the conspiracy theory of jurisdiction applies when several individuals "(1) conspire to do something (2) that they could reasonably expect to have consequences in a particular forum, if one co-conspirator (3) who is subject to personal jurisdiction in the forum (4) commits overt acts

11

in furtherance of the conspiracy, those acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction even if they have no other contacts with the forum." *Se. Const., Inc. v. Tanknology-NDE Int'l, Inc.*, No. CIV.A. 3:05-210, 2005 WL 3536239 at * 9 (S.D. W. Va. Dec. 22, 2005) (citations omitted).   While the conspiracy theory of jurisdiction may apply under certain circumstances, Plaintiff fails to identify specific defendants, acts, or facts establishing such a conspiracy under these elements.

Similarly, Plaintiff fails to satisfy the "effects test."   *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 n.7 (4th Cir. 2003) ("This 'effects test' of specific jurisdiction is typically construed to require that the plaintiff establish that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.")   Here, Plaintiff fails to name any specific out of state defendants to whom this theory applies, nor does he allege facts showing that any such defendants engaged in intentional conduct expressly aimed at West Virginia.   Accordingly, Plaintiff's jurisdictional arguments are conclusory and insufficient.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to reconsider is **DENIED**.   (ECF No. 163.) Further, Plaintiff's arguments largely restate claims that have already been thoroughly addressed and resolved in numerous PF&Rs, and multiple memorandum opinions and orders entered by the Court.   Further, given that Plaintiff's arguments merely reiterate those previously raised in earlier motions, any further motions seeking reconsideration will be summarily **DENIED**.   *See*

*Grandison v. Schaefer*, 37 F.3d 1493 (4th Cir. 1994) (finding that because Plaintiff's second motion for reconsideration did "nothing more than restate his earlier claims," the district court's summary denial of the motion was not an abuse of discretion.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      March 23, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

13